<u>**NOT FOR PUBLICATION**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

REGINALD DAVID LUNDY,

                    Petitioner,

          v.

LISA J.W. HOLLINGSWORTH,

                    Respondent.

---

Civil Action No. 09-367 (JBS)
[Relates to Cr. No. 03-354-02 (JBS)]

**OPINION**

**APPEARANCES:**

Reginald David Lundy
     Petitioner <u>pro se</u>
USP Marion
P.O. Box 1000
Marion, IL 62959

**SIMANDLE,** District Judge

     Petitioner Reginald David Lundy, a civil contemnor currently confined at the United States Penitentiary at Marion, Illinois, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent is Warden Lisa J.W. Hollingsworth.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

I.  BACKGROUND

On May 6, 2003, Petitioner and eight other individuals were indicted on charges of having defrauded the United States by producing and conspiring to produce fraudulent money orders.  See United States v. Harris, Cr. No. 03-0354 (D.N.J.).  Since the filing of the indictment, Petitioner and several of his co-defendants engaged in a protracted campaign aimed at harassing numerous persons associated with their criminal case by, inter alia, sending fraudulent financial security arrangements and contracts to multiple judicial officers, United States attorneys, defense attorneys, and Court personnel.  As the Court explained in its April 22, 2004, Opinion:

> Some of the defendants, ... [including Mr. Lundy,] have, from the time this matter was in its Grand Jury phase to the present, sent baseless documents to the judicial officers and prosecutors involved which purport to require payment for each use of their names in this matter, as the defendants assert that their names are copyrighted personal property for which they are entitled damages for each "infringement."  When such "invoices" or "affidavits of debt," typically for millions of dollars, are not paid, the defendants have attempted to file liens for such sums with the New Jersey Division of Revenue against the personal property of the prosecutor or judicial officer.
>
> ...
>
> By July 2003, the Court had received documents, bearing the signatures of the five above-named male defendants [including Mr. Lundy], which purported to constitute commercial contracts, liens, and security interests against the undersigned due to his performance of official duties in this criminal case.  The United States applied for filing restrictions based on similar communications from the defendants.  In papers filed

2

> with the Court, the defendants had stated an intention
> to file false affidavits of debt and UCC Financing
> Statements, based on false security agreements, with
> the New Jersey Department of Revenue, so that they
> could assert a recorded security interest in all
> personal assets of those involved in the case.

(<u>United States v. Harris</u>, Cr. No. 03-0354 (D.N.J.), Docket Item

No. 193 at 3-5.)

In order to restrain Petitioner and his co-defendants from

continuing to carry out these stated intentions, the Court issued

an Order on August 27, 2003, pursuant to its authority under the

All Writs Act, 28 U.S.C. § 1651(a), enjoining Petitioner and his

co-defendants from

> sending any written communications to this Court, to
> any judicial officer or employee of this Court, to the
> United States Attorney, to any Assistant United States
> Attorney, to any employee or officer of the United
> States Department of Justice, or to any attorney
> appearing in this case, whether in an official or
> allegedly "private" capacity:
>
> (1) White attempts to create a lien or financial
> interest; or
>
> (2) Which purports to state a contract with such
> recipient regarding any civil or commercial matter ...

(<u>United States v. Harris</u>, Cr. No. 03-0354 (D.N.J.), Docket Item

No. 107.)  The Order further enjoined Petitioner and his co-

defendants from "creating affidavits of debt or UCC Financing

Statements ... based upon the abovedescribed security agreements

or contracts or liens however entitled."  (<u>Id.</u>)

On June 4, 2004, Richard DiGiacomo, an employee of the

United States Pretrial Services office of this Court, received a

document from Petitioner entitled "Notice of Acceptance and Offer," which demanded payment of $3,730,000,000.00 as a result of actions taken by Mr. DiGiacomo in the course of his employment with the Court. (Cr. No. 03-354 (D.N.J.), Docket Item 242.) The document further stated that Mr. DiGiacomo's failure to pay Petitioner would result in a filing of involuntary bankruptcy against him. (Id.) The Court convened a hearing on June 7, 2004, at which Petitioner, who was represented by counsel, admitted to having created and mailed the "Notice of Acceptance and Offer" to Mr. DiGiacomo. (Id.)

Upon finding that Petitioner had "received and understood this Court's Order of August 27, 2003," and that he had knowingly violated that Order by mailing the threatening document to Mr. DiGiacomo, the Court concluded that there was clear and convincing evidence that Petitioner had acted in civil contempt of the Court's Order. (Id.) The Court accordingly adjudged Petitioner to be in civil contempt and ordered

> that the appropriate sanction for such civil contempt is incarceration until defendant Lundy purges himself of his contempt by acknowledging and affirming, in writing, under penalty of perjury, and in a manner approved by this Court in a subsequent Order, that he withdraws the document entitled "Notice and Acceptance of Offer" in Exhibits C-1 and C-2 which is null and void, and that he will not create, or help create, any similar documents involving the undersigned, or any judicial officer or employee of this Court, the United States Attorney, any Assistant United States Attorney or employee or officer of the United States Department of Justice, or any attorney appearing in this case which:

4

(1) attempt to create a lien or financial interest or UCC Financing Statement; or

(2) purport to state a contract with a recipient regarding any civil or commercial matter; or

(3) assert an affidavit of debt, or amount owed, from the recipient's property based upon a security agreement or contract or lien however entitled.

(Id.)

On July 2, 2004, Petitioner was found guilty of producing and conspiring to produce fraudulent money orders in violation of 18 U.S.C. §§ 514(a) and 371, and was sentenced on October 29, 2004, to a term of imprisonment of 120 months, which was to run consecutively to his confinement under the civil contempt Order. (Cr. No. 03-0354 (D.N.J.), Docket Item 393.)  Petitioner, along with his co-defendants, appealed his conviction to the Court of Appeals.  On March 31, 2008, the Court of Appeals for the Third Circuit issued an Opinion and Order finding "that each of the issues raised by appellants is without merit" and affirming the judgments of sentence.  (App. No. 04-4281 (3d Cir.), March 31, 2008 Opinion and Judgment; Cr. No. 03-0354 (D.N.J.), Docket Item 540.)  The Court of Appeals subsequently denied Mr. Lundy's petition for a rehearing en banc.  (App. No. 04-4281 (3d Cir.), June 4, 2008 Order.)  Petitioner did not file a petition for writ of certiorari with the U.S. Supreme Court.  Petitioner has filed a collateral challenge to his conviction pursuant to 28 U.S.C.

§ 2255, that remains pending in this Court.  See <u>Lundy v. Levi</u>, Civ. No. 08-1931 (D.N.J.).

Petitioner filed his first application to vacate the Court's contempt Order in the criminal case on August 31, 2007.  See <u>Lundy v. Yost</u>, Civ. No. 07-4180 (D.N.J.).  Counsel was appointed to represent Petitioner and, in response to counsel's oral application, the Court ordered an evaluation of Petitioner's mental competency.  Petitioner was transferred to the Federal Medical Center in Devens, Massachusetts, where he was evaluated by Dr. Shawn E. Channell, Ph.D., a forensic psychiatrist.  In his evaluation, dated April 14, 2008, Dr. Channell determined that:

> Mr. Lundy has never experienced symptoms consistent with a major mental illness or cognitive condition that would significantly impact his ability or capacity to understand information provided to him, including information as it pertains to his understanding of his current legal situation.  Further, Mr. Lundy does not experience symptoms of a mental or cognitive condition which would affect his ability to withdraw previously filed documents or his ability to refrain from filing such documents in the future.

(Civ. No. 07-4180 (D.N.J.), Docket Item 21 at 10.)  Dr. Channell concluded that Mr. Lundy's behavior is consistent with the belief system of a subculture known as the "redemptionist" movement, which, in brief, espouses the theory that "in 1933, a bankrupt United States converted its populace into assets against which it could sell bonds as collateral."  (<u>Id.</u> at 8.)  According to Dr. Channell, while "the entire redemptive belief system is erroneous[,] ... [it] is one held by [] an organized subculture

6

in the United States and is therefore neither delusional nor indicative of a mental illness." (Id. at 9.)

At a hearing convened on May 21, 2008, counsel for Petitioner requested permission to conduct an independent psychological evaluation of Petitioner's capacity to purge himself of his contempt, which the Court granted in an Order entered that day. (Civ. No. 07-4180 (D.N.J.), Docket Item 22.) Petitioner retained Dr. Kenneth J. Weiss to evaluate Petitioner's competency and capacity to comply with the Court's orders. Upon his examination of Petitioner and his review of the relevant documents, Dr. Weiss echoed Dr. Channell's conclusions, finding that Petitioner understands the nature of the Court's orders, has the capacity to refrain from mailing documents in violation of those orders, and is competent to decide for himself whether or not to purge himself of his contempt and cease mailing financially threatening documents. (Civ. No. 07-4180 (D.N.J.), Pet. Br. Ex. A at 2-3.) Throughout the course of those proceedings, Petitioner continued to mail documents asserting fraudulent and fictitious financial claims and contracts against a wide range of recipients associated with his criminal case, in continuing violation of the Court's prior Orders.

Following a hearing, this Court denied Petitioner's application to vacate the contempt Order, on September 23, 2008. The Court found, by clear and convincing evidence, that

Petitioner understood the Court's orders and was able, if he so chose, to bring his conduct into compliance with those orders. The Court found that Petitioner was not deterred from his actions by the recent criminalization of such behavior under 18 U.S.C. § 1521, and that his oral statements in Court showed that Petitioner had no intention of ceasing his threatening mailings or recognizing this Court's authority to require him to cease.

> Unlike coercive civil contempt sanctions entered against trial witnesses who refuse to testify, the purpose behind the Contempt Order herein has not abated, because Mr. Lundy still is engaged in related proceedings before this Court attacking that conviction which are just as likely to be disrupted by his harassment tactics as was the criminal case in which the Contempt Order was originally entered. ... In short, the passage of time and the conclusion of Mr. Lundy's criminal case have not extinguished the Court's interest in enforcing its lawful orders under the circumstances presented here. ...

> ...

> As has been clear to Mr. Lundy throughout these proceedings, he may elect at any time to put an end to his contempt sanctions

> > by acknowledging and affirming, in writing, under penalty of perjury, and in a manner approved by this Court in a subsequent Order, that he withdraws the document entitled "Notice and Acceptance of Offer" in Exhibits C-1 and C-2 which is null and void, and that he will not create, or help create, any similar documents involving the undersigned, or any judicial officer or employee of this Court, the United States Attorney, any Assistant United States Attorney or employee or officer of the United States Department of Justice, or any attorney appearing in this case.

8

> (Cr. No. 03-354-02, Docket Item 242.)   In short, Mr.
> Lundy remains free to desist from his contumacy when he
> so chooses, at which point the civil contempt sanctions
> "shall cease immediately."   (Id.)

(Civ. No. 07-4180 (D.N.J.), Opinion, Docket Item 28 at 22, 28.)

Petitioner's appeal of that decision remains pending.   (App. No.

08-4190 (3d Cir.).)

On January 26, 2009, this Court received a pleading from

Petitioner captioned as a petition for writ of habeas corpus.[2]

---

[2] The Court exercises jurisdiction in this matter under the All Writs Act, 28 U.S.C. § 1651(a).   The Contempt Order in the criminal case was entered pursuant to the Court's "inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." United States v. Dowell, 257 F.3d 694, 699 (7th Cir. 2001) (citation omitted); see also Taberer v. Armstrong World Industries, Inc., 954 F.2d 888, 899 (3d Cir. 1992) (recognizing that the "contempt power is inherent in the courts").

Regarding the Court's authority to entertain the application presently under consideration, the Court recognizes that Petitioner has characterized his submission of this matter as having been filed pursuant to 28 U.S.C. § 2241.   Because Petitioner is not confined within this judicial district, the Court recognizes that it cannot exercise authority over this matter pursuant to the statute invoked by Petitioner.   Instead, the Court treats Petitioner's submission as an application to vacate the Court's Contempt Order in the underlying criminal case.   As this Court has explained,

> The Court has jurisdiction to review its own contempt
> citation under the All Writs Act, which provides in
> relevant part that "all courts established by Act of
> Congress may issue all writs necessary or appropriate
> in aid of their respective jurisdictions and agreeable
> to the usages and principles of law."   28 U.S.C.
> § 1651(a).

United States v. Harris, 2008 WL 482347, at *3 (D.N.J. Feb 20, 2008).

In support of the request for release, Petitioner asserts the following:

> 9.   Affiant has further investigated matters relative to this case wherefore Affiant hereby & herein asserverates [sic] that Affiant has & will produce witnesses, evidence and testimony in an offer of proof that officers of the Court by their perfidy are criminals in a criminal enterprise acting in collusion to overthrow the Constitution for the United States of America in the nature of sedition and treason and lack sufficient years left in their lives to do the prison time that they have so dilligently [sic] earned. ...

> 12.  Pursuant to Declaration and Treaty of Peace to World #90303 RDLEB which was Apostilled under seal of Treasurer of the State of New Jersey, John E. McCormac, CPA on the 30th of December 2003, No. 189344, filed in Philadelphia County, Pennsylvania, February 19, 2004, No: 04111, representing the Paramount Creditor and Secured Party, Affiant, and UCC-1 Financing Statement and Security Agreement filed on August 8, 2000 in Trenton, New Jesey, No.: 1990843 representing Statement of Interest of the defendant REGINALD DAVID LUNDY.  Treaty of Peace to World #90303 RDLEB was entered into the court's records and assented to by Jerome B. Simandle, d.b.a UNITED STATES DISTRICT JUDGE and all agents thereof on April 13, 2004, as a contract.

> 13.  Affiant sent the original dated February 27, 2008 entitled Conditional Acceptance For Value to Jerome B. Simandle, the contents stated that Notice to Agent is Notice to Principal/Notice to Principal is Notice to Agent.  Affiant sent a Notice of Fault and Opportunity to Cure, the dishonor by non-response to the presentment to Jerome B. Simandle dated April 8, 2008.  In the February 27, 2008 Conditional Acceptance for Value, the Respondents were also Noticed to respond to a Third Party who is an agent of the Secretary of State of Oregon, Notary Public Karen L. Tappert, P.O. Box 9277, Bend Oregon 97708.  The Notary sent the same documents to Jerome B. Simandle, that Affiant had previously sent non-

response.  The Notary, Karen L. Tappert issued an
Affidavit in Support of Notarial Protest, A Notice
of Fault and Opportunity to Cure by Non-Response
Under the Notarial Seal.   Jerome B. Simandle
submitted the following documents to the Clerk of
the Court to be filed under the seal of Karen L.
Tappert, Notary, on September 16, 08 in open
Court:

1.    Conditional Acceptance for Value.
2.    Notice of Fault and Opportunity to Cure.
3.    Certificate of Non-Response (CNR).

The CNR indicated Respondent's failure and/or
refusal to rebut one point or traverse any one
aspect of the afformentioned Affidavits
respectively.   Respondent, by tacit acquiescense,
stipulates, confirms, approves, assents, and
agrees that Affiant is being illegally and
unlawfully, restrained of liberty, coupled with
Respondent being in contract with Affiant.
Affiant looks to the Court to compel Respondent to
perform Respondent's legal duty owed Affiant and
enforce the contract in effecting Affiant's
immediate release and discharge from continued
unlawful and illegal detention, incarceration and
imprisonment due to Respondent not having a legal
or lawful grant of jurisdictional authority.

14.   Affiant, third Party Intervenor, Real Party in
      Interest, and sovereign, by Special Visitation
      under R. E(8) of the Supplemental rules hereby
      petitions for Summary Administration for the
      release of the subject property in the above
      referenced action.   In the above reference action
      the United States issued True
      Bills/Judgments/Orders Miller Act Bonds and other
      negotiable instruments which were underwritten,
      re-insured, bundled and sold as US Treasury Bonds
      and/or Notes.   "All moneys paid into a court of
      the United States, or received by an official
      thereof, in any case pending or adjudicated in
      such court, shall be forthwith deposited with the
      US Treasurer, in the name and to the credit of the
      court.". [28 USCS § 2041], FRCivP, Rule 67 extends
      "All moneys" section to all property received by
      an official of the court.   Acting as trustee, with
      a fiduciary duty to the Entitlement Holder(s), the

11

Clerk of the Court was mandated to deposit said
Bonds, negotiable instruments and other property
with the US Treasury in the appropriate name and
to the credit of the Court.  The moneys and
property received by the Court are not public nor
are they subject to attachment.  The Courts make
it clear that any interference with these moneys
would amount to contempt.  These moneys are not in
the possession of the clerk, but, are in the
Registry of the Court awaiting distribution and/or
withdrawal by the Entitlement Holder(s). [28 USCS
§ 2042].  No moneys deposited under Section 2041
shall be withdrawn except by order of the court
with the only requirement for payment being
Petition re: Notice of Right to the moneys and
agreement of the parties.  The above referenced
action has been adjudicated there are no ongoing
disputes or appeals pending.  The Parties are in
agreement.

FAILURE TO ACT UPON THIS AFFIDAVIT WITHIN SEVENTY-TWO
(72) HOURS WILL BE DEEMED A DENIAL WHEREBY FILING WILL
PROMPTLY BE MADE IN A SUPERIOR COURT.

(Petition (footnote omitted).)  The Petition continues in a

similar vein.  For example, Petitioner asserts in the "Affidavit

of Special Negative Averment in Support," that:

4.   Affiant is not in receipt of any evidence that
Respondents have not been subrogated as sureties
in the above referenced cause and have agreed by
dishonor and protest and believes that none
exists. ...

6.   Affiant is not in receipt of any evidence that
upon Respondents accepting and entering into a
private contractual agreement No.: 90303 RDLEB,
that upon Respondents violating and dishonoring
the contract has agreed that Affiant is justified
in taking the equity via involuntary bankruptcy
upon Respondents and believes that none exists.

7.   Affiant is not in receipt of any evidence why
notarial services should not have been exercised
(performed) to obtain a Private Judgment against
Respondents entitled "Certificate of Default",

which is (evidence of dishonor) and Notice of
Protest," and firmly believes that none exists.

8.  Affiant is not in receipt of any evidence why a
    UCC Financing Statement should not be filed naming
    Respondents as Debtors to Affiant for liability(s)
    of the aforementioned Private Claim and Judgment
    for all Respondent's assets, land and real
    property, commercial tort claims, letters of
    credit, letters of credit rights, chattel paper,
    instruments, deposit accounts, documents, general
    intangibles and all said foregoing property, now
    owned and hereafter acquired and wherever located
    should not be pledged as collateral, and believes
    that none exists. ...

(Affidavit of Special Negative Averment in Support.)

The supporting Affidavit concludes:

I am not an expert in the law, however, I do know right
from wrong.  If there is anyone damaged by any
statements herein, if he inform me by relevant facts, I
will make every effort sincerely to amend my ways.
Additionally, any previous dishonor(s) were inadvertent
and I hereby apoligize [sic] for any such dishonor(s).
I hereby and herein reserve the right to amend and make
amendment(s) to this document as necessary in order
that the truth may be ascertained and proceedings
justly determined.  If anyone has information that
would or does controvert and overcome this Affidavit,
please advise me in WRITTEN AFFIDAVIT FORM within
thirty (30) days from receipt of same, any counter
Affidavit must include affiant's full Christian or
baptismal name or name given at birth in upper and
lower case format, sworn to be true, correct,
materially complete and not misleading, from affiant's
first hand knowledge regarding each and every rebutted
point, under affiant's unlimited liability and under
the pains and penalties of perjury, before a Notary
Public.  No unsworn declarations are acceptable as they
may be utilized to shade or color the truth and/or
create and provide untruth(s) by omission(s).  This
Petition is not intended to harass or create a
controversy.

(Affidavit of Special Negative Averment in Support.)

Finally, attached to the Petition is a document addressed to this Judge and Clerk of the Court William T. Walsh, dated January 6, 2009, entitled "Instructions for Discharge and Conditional Release of Surety Bonds - Immediate Action Required," which purports to state that this Judge, Joel B. Rosen, Christopher J. Christie, and William T. Walsh, have guaranteed to satisfy any and all losses of the United States in the related actions Crim. No. 03-0354-2 (D.N.J.) and Civil No. 08-1931 (D.N.J.).  The document further instructs this Judge and Clerk of the Court William T. Walsh to conditionally release the surety bonds in the names of the aforementioned individuals upon honor and performance of the attached purported contract.

Petitioner urges the Court to dissolve the Contempt Order.

II.  <u>ANALYSIS</u>

For the following reasons, this Court will deny Petitioner's application to vacate the Contempt Order.

As this Court has previously found, by clear and convincing evidence, Petitioner is competent - that is, he understands this Court's orders and is able, if he so chooses, to bring his conduct into compliance with these orders.  This Court further finds, by clear and convincing evidence, that Petitioner has failed to purge himself of his contempt of the Court's August 27, 2003 Order.  By this Petition and its attachments, Petitioner continues to assert that various federal officials associated

14

with his criminal matter have undertaken and defaulted on purported contractual obligations to him.

Initially, the Court notes that "[a] finding of contempt must rest on clear and convincing evidence." Harris v. City of Philadelphia, 47 F.3d 1333, 1340 (3d Cir. 1995). The Contempt Order at issue here adjudged Petitioner to be in civil contempt and imposed the coercive sanction of imprisonment, not to punish Petitioner's past noncompliance with the Court's orders, but to compel future compliance. See Roe v. Operation Rescue, 919 F.2d 857, 868 (3d Cir. 1990). The sanction imposed in this case is manifestly one of coercive civil contempt: under the terms of the Contempt Order, Petitioner is to be confined until, and only until, he withdraws his fraudulent mailings and renounces his intent to mail such documents to specified individual in the future. Cf. International Union v. Bagwell, 512 U.S. 821, 828 (1994) (the paradigmatic coercive civil contempt sanction involves the confinement of a contemnor "indefinitely until he complies with an affirmative command") (emphasis in original); Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 442 (1911) (in these circumstances, the contemnor "carries the keys of his prison in his own pocket"). This Court has further indicated, in hearings, a willingness to dissolve the Contempt Order if Petitioner merely ceases this offending conduct and states his intention not to resume. This Petition contains no such

15

undertaking.  To the contrary, in this Petition and its attachments, Petitioner continues to assert the existence of various contractual undertakings by federal employees under theories that are fraudulent and specifically precluded by this Court's Order.

Nevertheless, coercive civil contempt orders like the one at issue in this case "ordinarily abate when the proceedings out of which they arise are terminated," United States v. Slaughter, 900 F.2d 1119, 1125 (7th Cir. 1990), because such orders typically are aimed at coercing a reluctant individual into participating in the litigation by, e.g., attending a deposition or testifying at trial.  "Such abatement does not occur, however, when the need or purpose for the coercive contempt order survives the underlying proceeding."  Id.  Among the circumstances that may warrant the sustained application of a coercive civil contempt sanction beyond the termination of the litigation are where the sanction serves "general law enforcement purposes," id. at 1126, or where the terminated action is "closely related to" or "intertwined with" an action that remains pending before the Court such that "the cause of action out of which the contempt arose is not [considered to have] truly abated."  Petroleos Mexicanos v. Crawford Enterprises, Inc., 826 F.2d 392, 400 (5th Cir. 1987).

16

The Court finds that the rationales of <u>Slaughter</u> and
<u>Petroleos</u> are applicable in the circumstances at issue here,
warranting the sustained application of the Contempt Order in
this matter, notwithstanding the termination of direct appeals in
Mr. Lundy's criminal case.  While Petitioner's criminal case may
be at an end, there is a closely related matter - his section
2255 petition - now pending before this Court.  The Court, its
employees, and the attorneys working on the matter of Mr. Lundy's
habeas petition have an interest in participating in the orderly
administration of justice without being subjected to Mr. Lundy's
financial threats.  This was precisely the "need or purpose"
justifying the entry of, first, the Court's August 27, 2003 Order
enjoining Mr. Lundy from creating and mailing fraudulent
financial documents and, second, the subsequent Contempt Order.
<u>Slaughter</u>, 900 F.2d at 1125.  Unlike coercive civil contempt
sanctions entered against trial witnesses who refuse to testify,
the purpose behind the Contempt Order herein has not abated,
because Mr. Lundy still is engaged in related proceedings before
this Court attacking that conviction which are just as likely to
be disrupted by his harassment tactics as was the criminal case
in which the Contempt Order was originally entered.  <u>See</u>
<u>Petroleos Mexicanos</u>, 826 F.2d at 400.  In short, the passage of
time and the conclusion of Mr. Lundy's criminal case have not
extinguished the Court's interest in enforcing its lawful orders

17

under the circumstances presented here.  <u>See</u> <u>id.</u>; <u>Slaughter</u>, 900
F.2d at 1125-26.

The above-cited authority and the Court's ongoing interest
in the orderly administration of justice support the continued
application of the Contempt Order in this case.  The Court,
however, continues to recognize that the upshot of Petitioner's
active contumacy is that he has yet to begin serving his 120-
month sentence, because that sentence is to be served consecutive
to his civil contempt confinement.  Because it is in the Court's,
the Government's, and Petitioner's interest for Petitioner to
begin to serve his sentence as soon as possible, the Court has
considered, again, whether there are alternative measures to the
Contempt Order that would achieve the same purpose while enabling
Mr. Lundy to serve the sentence imposed for the crimes for which
he was convicted.  In particular, the Court has considered
whether the recent enactment of 18 U.S.C. § 1521[3] is sufficient
to deter Mr. Lundy's threatening conduct.

Certainly, as the recent record in this and Petitioner's
other actions demonstrates, the enactment of Section 1521 has not
deterred Petitioner from making false and fraudulent financial
threats against individuals who have come into contact with his

---

[3] Section 1521 makes it illegal to knowingly "file, or
conspire[] to file, in any public record or in any private record
which is generally available to the public, any false lien or
encumbrance against the real or personal property" of United
States officers and employees.

18

case.  Moreover, the scope of the Court's August 27, 2003 Order
and section 1521 are not coterminous.  Whereas section 1521
proscribes filing false lien claims "in any public record or in
any private record which is generally available to the public,"
§ 1521, against the property of "any officer or employee of the
United States or of any agency in any branch of the United States
Government," § 1114, the August 27, 2003 Order prohibits a
broader range of conduct more closely tailored to the facts of
this case.  Specifically, the Order prohibits Petitioner not only
from filing false liens against United States employees, but also
from "sending any written communications ... which purports to
state a contract with such recipient regarding any civil or
commercial matter," terms directly applicable to this Petition
and its attachments.  Thus, this Court does not find that the
prospect of prosecution is an adequate substitute for the
Contempt Order sufficient to warrant vacating that Order.[4]

Petitioner is competent and capable of compliance with this
Court's Order.  He, nevertheless, has yet to purge his contempt.

---

[4] This Court previously found that nothing in the Bureau of
Prisons' then policies regarding prisoners' use (and abuse) of
mail could adequately address Petitioner's conduct such that the
Contempt Order could be resolved.  See Civil Action No. 07-4180
(D.N.J.).  In view of Petitioner's placing his false and
fraudulent financial threats into pleadings and their
attachments, it is apparent that there are currently no mail
regulations in the BOP that can adequately prevent Petitioner's
fraudulent efforts to perfect bogus "contracts" against judicial
officials and prosecutors involved in his criminal prosecution
and his post-conviction relief petitions and appeals thereof.

Petitioner remains free to desist from his contumacy when he so chooses, at which point the civil contempt sanctions "shall cease immediately."  Crim. No. 03-354-02 (D.N.J.), Docket Item 242.) Accordingly, the Court will deny the application to vacate the Contempt Order.

### III.   CONCLUSION

For the reasons set forth above, the Petition shall be denied.  An appropriate order follows.


 **s/ Jerome B. Simandle**
Jerome B. Simandle
United States District Judge

Dated:  **May 15, 2009**